**In the United States District Court
for the District of Kansas**

---

Case No. 22-cv-1043-TC-RES

---

DANIELLE CROW,

*Plaintiff*

v.

ASHLEY BREZENSKI, ET AL.,

*Defendants*

---

### MEMORANDUM AND ORDER

Danielle Crow, on behalf of minor child P.F., brings an action for negligence against Ashley Brezenski and M.B., Brezenski's minor child. Defendants each filed motions for summary judgment. For the following reasons, their motions, Doc. 77 and Doc. 88, are denied. Crow's motion to strike, styled as a motion for partial summary judgment, Doc. 86, is denied as moot.

### I

### A

Summary judgment is proper under the Federal Rules of Civil Procedure when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" when it is essential to the claim's resolution. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). And disputes over material facts are "genuine" if the competing evidence would permit a reasonable jury to decide the issue in either party's favor. *Id.* Disputes—even hotly contested ones—over facts that are not essential to the claims are irrelevant. *Brown v. Perez*, 835 F.3d 1223, 1233 (10th Cir. 2016). Indeed, belaboring such disputes undermines the efficiency Rule 56 seeks to promote. *Adler*, 144 F.3d at 670.

1

At the summary judgment stage, material facts "must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see also* D. Kan. R. 56.1(d). To determine whether a genuine issue of fact exists, the Court views all evidence, and draws all reasonable inferences, in the light most favorable to the nonmoving party. *See Allen v. Muskogee, Okl.*, 119 F.3d 837, 839–40 (10th Cir. 1997). That said, the nonmoving party cannot create a genuine factual dispute by making allegations that are purely conclusory, *Adler*, 144 F.3d at 671–72, 674, or unsupported by the record, *see Scott v. Harris*, 550 U.S. 372, 378–81 (2007).

The moving party bears the initial burden of showing the absence of any genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Hicks v. City of Watonga, Okl.*, 942 F.2d 737, 743 (10th Cir. 1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to dispositive matters. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).

## B

P.F. and M.B. are minor children, aged 11 and 10 at the time of the events giving rise to this case. Doc. 85 at 2.a.i.–ii.[1] P.F. was burned while setting fires with M.B. on June 13, 2021. Doc. 85 at ¶ 2.a.i.–iv. That day, P.F. was a guest at the Brezenski home for a sleepover with Ashley Brezenski's daughter, M.B. Doc. 85 at ¶ 2.a.i.–ii. There were several other children of varying ages present at the home but only one adult, Brezenski. Doc. 80 at 7, ¶ 2. Over the course of the afternoon and evening, P.F. and M.B. built two separate fires in the area immediately surrounding Brezenski's home using household goods, lighters, oil, and accelerants, including a bottle of rubbing alcohol. Doc. 94 at ¶¶ 8, 9, 12–14. Taking the facts in the light most favorable to the non-movant P.F., both fires were within the curtilage of the home, directly

---

[1] All facts are either uncontested or stated in the light most favorable to P.F., the nonmovant as to summary judgment on the negligence claims. All citations are to the document and page number assigned in the CM/ECF system.

outside M.B.'s bedroom window, which was directly below Brezenski's bedroom window on the floor above. Doc. 80-2 at 9.

P.F. and M.B. built the first fire sometime between 4 and 5 p.m., before dinner, and while it was still bright outside. Doc. 94 at ¶ 6. They built the second fire after dinner. Doc. 94 at ¶ 12. According to the testimony of a neighbor child present in the home, at about 7:45 p.m. Brezenski went to her bedroom upstairs to put her youngest child to sleep. Doc. 80-3 at 4. To do so, she turned on a movie, which was her usual way of putting her youngest child to bed. Doc. 80-2 at 14. Around 10 p.m. that evening, P.F. went upstairs and told Brezenski that "they were going to bed." Doc. 94-1 at 5. Brezenski told P.F. that they could get snacks before bed but that they should not make a mess while doing so. *Id.* She testified that she had no awareness that P.F. and M.B. were gathering items to make a fire. Doc. 80 ¶ 1.

At some point in the evening, M.B. retrieved a bottle of rubbing alcohol from inside the home and delivered it to P.F. in order to enlarge the fire. Doc. 80 at ¶ 30. Around 10:30 p.m., P.F. was severely burned when the bottle of rubbing alcohol caught fire and exploded. Doc. 85 at 2.a.iii.; Doc. 94 at ¶ 17. At that time, P.F. was outside the home, by the fire, alone. Doc. 80 at ¶ 22. It is unclear from this record where M.B. was at the time of the explosion, but it is undisputed that she was not injured. Doc. 78 at ¶ 22.

June 13 was not P.F.'s first time as a guest at the Brezenski home. According to M.B., on multiple occasions prior to June 13, M.B. and P.F. played with or experimented with fire, in some instances using lighters to burn toilet paper in the bathroom. Doc. 80 at ¶¶ 4, 5; Doc. 94 at ¶¶ 2, 3. M.B. and P.F. knew they were not allowed to, and should not have been, playing with fire. Doc. 78 ¶¶ 10–14. Brezenski testified that she was not aware of any occasions where M.B. and P.F. burned toilet paper or played with fire at her home. Doc. 78 at ¶¶ 1–4.

Crow, on behalf of P.F., filed a complaint in Kansas state court. Doc. 1. Brezenski properly removed the case. Doc. 1. Brezenski, on behalf of herself and M.B., filed motions for summary judgment. Doc. 77; Doc. 88. P.F. filed a motion for partial summary judgment. Doc. 86.

3

## II

Brezenski and M.B. argue that on the undisputed facts a jury could not find them negligent. Doc. 78; Doc. 88.[2] But there are sufficient facts which, if believed, would permit a jury to conclude that M.B. and Brezenski breached their respective duties to P.F. and are thus responsible for her injuries. As a result, their motions for summary judgment are denied.[3]

### A

M.B. seeks to avoid liability by arguing that she had no duty to P.F. Doc. 89 at 5. But she had one, albeit a limited one, and a reasonable jury could find that she breached it.

To state a claim for negligence under Kansas law, the defendant must owe the plaintiff a legal duty and breach that duty, thereby causing injury to the plaintiff in the form of legally cognizable damages. *Patterson v. Cowley Cnty.*, 413 P.3d 432, 437 (Kan. 2018).[4] Whether a duty exists is a question of law. *Elstun v. Spangles, Inc.*, 217 P.3d 450, 453

---

[2] Kansas law governs this dispute. Doc. 85 at ¶ 1.d.1. As such, decisions of the Kansas Supreme Court govern the legal analysis. *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013) (citing *High Plains Nat. Gas Co. v. Warren Petroleum Co.*, 875 F.2d 284, 288 (10th Cir. 1989)). If the law is ambiguous, a federal district court must look to the Kansas Supreme Court's rulings, "and if no such rulings exist, [it] must endeavor to predict how the high court would rule." *Finstuen v. Crutcher*, 496 F.3d 1139, 1148 (10th Cir. 2007) (quoting *Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 899 (10th Cir. 2006)).

[3] P.F.'s motion for partial summary judgment requests either that Defendants' "allegations, claims and defenses related to Plaintiff's alleged fault" be struck or in the alternative, if "M.B. files a motion for summary judgment related to her status as a minor" and the court grants it, that P.F. "receive the same legal treatment as M.B." Doc. 86 at 1. Defendants did not respond but it matters not. Plaintiff's motion for partial summary judgment is moot since Defendants did not raise allegations, claims and defense related to Plaintiff's alleged "fault" in their summary judgment motions and M.B.'s motion has not been granted. *See Stormo v. State National Insurance Company*, No. 19-10034, 2021 WL 4973835, at *3 (D. Mass. Oct. 26, 2021) (declining to rule on a premature motion for summary judgment).

[4] None of the parties dispute that if a duty exists for Brezenski and M.B., their alleged breach of those duties proximately caused P.F.'s injuries.

(Kan. 2009) (citing *Nero v. Kan. State Univ.*, 861 P.2d 768 (Kan. 1993)); *Berry v. Nat'l Med. Servs., Inc.*, 257 P.3d 287, 290 (Kan. 2011). Duties run only to foreseeable plaintiffs. *Manley v. Hallbauer*, 423 P.3d 480, 483 (Kan. 2018).

In Kansas, there is a "universal rule" to the effect that everyone is under a duty to exercise reasonable care to avoid causing harm to others. *See generally Striplin v. Kansas Gas & Elec.*, 461 P.2d 825, 828 (Kan. 1969). And according to the Kansas Supreme Court, this duty extends to a child to exercise such care as children of their same age, intelligence, capacity, and experience exercise under like circumstances. *Honeycutt ex rel. Phillips v. City of Wichita*, 796 P.2d 549, 557 (Kan. 1990) (rejecting the argument that a six-year-old is categorically incapable of negligence); *see generally* Restatement (Second) of Torts § 283A (1965) ("A child of ten may in one situation have sufficient capacity to appreciate the risk involved in his conduct, … but in another situation he may [not] and in the case of another child of ten of different mental capacity or experience a different conclusion may be reached."). A particular child's negligence is ordinarily a jury question; there is no specific age at which children are incapable of negligence. *Honeycutt*, 796 P.2d at 553.

Viewed in the light most favorable P.F., a jury may determine that the facts demonstrate that M.B. breached her duty of care to P.F. She was aware of, participated in, and did not act to prevent or discourage P.F. from building fires. And the harm to P.F. was objectively foreseeable when M.B. built fires with P.F. using accelerants sourced from within M.B.'s mother's home. *See Hanks v. Booth*, 726 P.2d 1319, 1321 (Kan. 1986) (holding that children ages seven and eight were negligent, but did not act willfully and maliciously, when they played with matches and set a barn ablaze accidently); *accord Farm Bureau Ins. Grp. v. Phillips*, 323 N.W.2d 477, 479 (Mich. Ct. App. 1982) (eight-year-old child was negligent when he failed to put out fire). Open fires are dangerous which is why M.B. was instructed not to play with fire. Doc. 78 at ¶ 10–14; *see also Pennington v. Little Pirate Oil & Gas Co.*, 189 P. 137, 138 (Kan. 1920) (noting that nine-year-old child killed by an oil pump was warned that the pump was dangerous and ordered to stay away from it). Even though M.B. may not have been present when P.F. suffered her injuries, a reasonable jury could find that M.B.'s actions fell below the standard of care for a child of her age, intelligence, and capacity under the circumstances. And ultimately, how to apportion fault between children jointly engaged in fire-making activities is a jury

5

question. *See Yount v. Deibert*, 147 P.3d 1065, 1076 (Kan. 2006) (per curiam) (holding it is a jury's duty to apportion fault among several children and teens jointly engaged in "pyromaniacal activities").

M.B. claims that she cannot be liable because of the rules applicable to the joint enterprise doctrine. Doc. 89 at 6. Under that doctrine, Kansas courts recognize that liability for the injuries to a third party can be imputed among members of a joint enterprise using concepts of agency law, but the existence of a joint enterprise "does not establish a duty of care between its members." *Cullip v. Domann*, 972 P.2d 776, 783 (Kan. 1979). Extrapolating that concept to this case, M.B. argues that while "Kansas law may have imposed a duty on both girls to prevent [harm to] third persons, there is no authority or support for the argument that they owed each other such duty." Doc. 89 at 6. It is true that the joint enterprise doctrine does not create the duty nor establish the standard of care that M.B. owed to P.F. But that duty is imposed by Kansas common law and a jury must determine whether the duty has been breached. *Honeycutt*, 796 P.2d at 559 ("we hold that the negligence of a particular child in particular circumstances should be determined by the factfinder in each case, based upon that degree of care exercised by children of the same age, intelligence, capacity, and experience").

### B

Brezenski seeks to avoid liability because she was unaware her daughter and P.F. were playing with fire and had no warning that they were planning to. *See* Doc. 78 at 8. But those questions must be resolved by a jury, not a court as a matter of law, since the injury to P.F. was not objectively unforeseeable.

Kansas law typically excuses parents for the negligence of their children. *Hanks v. Booth*, 726 P.2d 1319 (Kan. 1986); *see also* Kan. Stat. Ann. § 38-120 (imposing parental liability only for a child's "malicious or willful" acts). Nevertheless, a parent's failure to adequately supervise and control a child may lead to liability for the parent that is not derivative of the child's alleged negligence. *McGee v. Chalfant*, 806 P.2d 980 (Kan. 1991) (adopting the Restatement (Second) of Torts § 316 in Kansas); *Wood v. Groh*, 7 P.3d 1163, 1172 (Kan. 2000); *Russell ex rel. Russell v. Braden ex rel. Farran-Flaherty*, 217 P.3d 997, 1000 (Kan. Ct. App. 2009); *accord Donovan v. Sutton*, 498 P.3d 382, 389 (Utah 2021), *Sowell v. Solomon*, 870 S.E.2d 39 (Ga. Ct. App. 2022). Specifically, such liability arises where a parent fails to exercise reasonable care to control a

minor child to prevent the child from intentionally harming others or creating an unreasonable risk of bodily harm to others and the parent knows or should know that they have the ability to control the child and knows or should know of the necessity and opportunity for exercising such control. Restatement (Second) of Torts § 316 (1964); *see also Mitchell v. Wiltfong*, 604 P.2d 79 (Kan. 1979); *accord Justin M. v. Beadle*, 142 N.Y.S.3d 213, 215 (N.Y. App. Div. 2021).[5] A duty to supervise and control is only owed to individuals foreseeably injured by a lack of supervision. *Russell ex rel. Russell*, 217 P.3d at 1002. But unless it is clear as a matter of law that the child's actions and the resulting injury were objectively unforeseeable, or that the injured party was objectively an unforeseeable plaintiff, summary judgment is inappropriate. *Cullip v. Domann*, 972 P.2d 776, 785 (Kan. 1979); *Russell ex rel. Russell*, 217 P.3d at 1000; *Gragg v. Wichita State Univ.*, 934 P.2d 121, 133 (Kan. 1997); *accord Levine v. George*, 174 N.Y.S.3d 699, 701 (N.Y. App. Div. 2022).

In the light most favorable to P.F., there is evidence that Brezenski breached her duty of care. First, she knew or should have known of the necessity to supervise and control M.B. and P.F., minors in her home. There is some evidence that the children had been playing with fire all afternoon and evening (including beneath Brezenski's bedroom window) and on prior occasions. Doc. 80 at ¶¶ 4, 5; Doc. 80-2 at 9. Moreover, Brezenski demonstrated her subjective awareness that she was in charge and had the ability to control M.B. and P.F when she issued instructions to both children over the course of the evening, including that they should not make messes and go to bed. Doc. 94-1 at 5. And she knew she was the only adult in a position to supervise the children in her home. Doc. 80 at 7, ¶ 2. Second, building a fire with household materials, accelerants, and rubbing alcohol creates an unreasonable risk of bodily harm to others. *See Shirley v. Glass*, 308 P.3d 1, 9 (Kan. 2013) (comparing the likelihood of harm from firearms and marbles); *see also U.S. v. Konopka*, 409 F.3d 837, 839 ("fire is dangerous").

---

[5] Brezenski seeks to characterize P.F.'s arguments as a claim that Brezenski is strictly liable for injuries to P.F. Doc. 95 at 20. This argument was raised for the first time in a late reply brief, but it does not matter. P.F. is not making a strict liability argument. P.F. argues that reasonable care would have uncovered the risk and mechanism of injury, not that no amount of care or investigation could have prevented the harm. *See* Doc. 80 at 17–24.

Third, harm to P.F. was not unforeseeable. Brezenski's arguments to the contrary are unpersuasive. *Contra* Doc. 78 at 8–9; Doc. 80 at 4. Her children had friends over, including P.F., and she was the only adult home. Doc. 80 at 7. She knew or should have known that flammable materials, including lighters and accelerants, were accessible within the home. The girls went in and out of the home multiple times over the course of the evening, Doc. 94 at ¶ 8, 9, 12–14, and lit a fire directly under her bedroom window, Doc. 80-2 at 9. The concomitant risk of injury was objectively foreseeable to a person in Brezenski's shoes, especially since there is some evidence that the girls lit fires at the home on prior occasions, Doc. 80 at ¶ 4, 5. *Cf. South v. McCarter*, 119 P.3d 1, 13–15 (Kan. 2005) (a risk of harm is foreseeable when a reasonably prudent person would take that risk into account given the circumstances).

Contrary to her argument, Brezenski's situation was unlike that of the parents in *Cullip v. Domann*, 972 P.2d 776 (Kan. 1979). *Contra* Doc. 78 at 10. In *Cullip*, three 14-year-olds, J.J., William, and David, went hunting away from home. *Id.* at 780. During the trip, William accidentally shot David, who then sued William, J.J., and their parents. *Id.* J.J.'s parents were found not liable because it was objectively unforeseeable that their son's friend would accidentally shoot another boy on a hunting trip. *Id.* at 785. The *Cullip* hunting trip took place off J.J.'s parents' property, without the parents' knowledge, and with no forewarning that the boys would go hunting as they had never been hunting before. *Id.* Brezenski knew much more than the *Cullip* parents and the girls' dangerous activities were much more discoverable. The girls were within sight of her home when they lit the fires and clearly planned to play with fire, given their extensive material gathering activities. They may even have played with fire at the home multiple previous times. *See* Doc. 80 at ¶¶ 4, 5.

### III

For the foregoing reasons, Brezenski's motion for summary judgment, Doc. 77, and M.B.'s motion for summary judgment, Doc. 88, are denied. P.F.'s motion, Doc. 86, is denied as moot.

It is so ordered.

Date: December 20, 2023              s/ Toby Crouse
                                     Toby Crouse
                                     United States District Judge

8